## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AIRPORT SQUARE HOLDINGS, LLC | * | |
| | * | |
| | * | |
| v. | * | Civil No. JFM-16-02883 |
| | * | |
| | * | |
| GCCFC 2007-GG9 | * | |
| COLOMARY FACILITIES, LLC | * | |

********

### MEMORANDUM

Plaintiff Airport Square Holdings, LLC ("Airport Square") brings this lawsuit against defendant GCCFC 2007-GG9 Colomary Facilities, LLC ("Colomary") seeking declaratory relief, damages, restitution, and the return of an escrow deposit paid to Colomary in connection with a contract for the sale of land. Airport Square asserts that its contract to purchase two parcels of real property from Colomary is void, that Colomary breached the contract between the parties, and that Colomary has been unjustly enriched as a result of the aborted land transaction. Colomary countersues for breach of contract, seeking declaratory relief and the release of Airport Square's cash deposit from the escrow account. Now pending is Colomary's motion for summary judgment, (ECF No. 27), and Airport Square's cross motion to grant their Rule 56(d) application and to compel discovery, (ECF No. 31). The motions are fully briefed and no oral argument is necessary. *See* Local R. 105.6. For the reasons set forth below, Colomary's motion for summary judgement is granted, and Airport Square's Rule 56(d) application and its motion to compel discovery are denied as moot.[1]

---

[1] The substance of the parties' dispute regarding discovery was largely resolved during a conference call on January 18, 2017. Subsequently, Airport Square filed a motion for extension of time to complete discovery on February 6, 2017. (ECF No. 44). Because I have decided to

## BACKGROUND

This dispute arises out of contract for the sale of two parcels of land known respectively

as Airport Square 10 and Airport Square 20 ("the Properties") in Linthicum, Maryland. (ECF

No. 2 ¶ 11).  On or about March 3, 2016, Airport Square entered into an Agreement for Sale and

Purchase of Property ("the Contract") and agreed to purchase the Properties from Colomary for

$14,910,000.  (*Id.* ¶ 27).  Pursuant to the terms of the Contract, Airport Square delivered a

nonrefundable $1,000,000 deposit to an escrow agent, LNR Partners, LLC, on March 4, 2016.

(*Id.* ¶ 30).  The parties set a closing date of March 29, 2016 at 2:00 pm on which Airport Square

was scheduled to deliver the balance of the Properties' purchase price.  (*Id.* ¶ 31).  At the time

the Contract was executed, both properties were subject to long-standing lease agreements with

the United States Army Corps of Engineers.  (*See id.* ¶ 9).

According to Airport Square, prior to the closing date on the Contract, it became aware

that Colomary had previously entered into a contract to sell the Properties to another buyer,

Airport Square Owner, LLC[2] (the "First Purchaser"), in February 2016.  (*Id.* ¶ 12, 32).

Colomary and the First Purchaser had set a closing date for their contract on March 1, 2016 at

2:00pm, and the First Purchaser delivered a $500,000 deposit to the escrow agent.  (*Id.* ¶ 15).

Airport Square contends that the First Purchaser and Colomary agreed to extend their original

closing date by two weeks and amended their original contract to reflect the change.  (*Id.* ¶¶ 16–

17).  Apparently in consideration for the extension of the closing date, the First Purchaser wired

two additional deposits to the escrow agent in the amounts of $260,000 and $1,250,000 on

February 29, 2016 and March 1, 2016, respectively.  (*Id.* ¶ 19).  Despite their allegedly amended

---

grant defendant Colomary's motion for summary judgment, the motion for extension of time to
complete discovery is also denied as moot.

[2] Plaintiff Airport Square and the First Purchaser, Airport Square Owner, LLC, are not affiliated
in any way.

agreement, Colomary declared the First Purchaser in default and terminated the sales contract on March 1, 2016. (*Id.* ¶¶ 20–22). The First Purchaser subsequently filed a complaint against Colomary in the Circuit Court for Anne Arundel County seeking specific enforcement of the parties' sales contract. (*Id.* ¶ 25, 32, Ex. A).[3]

Additionally, shortly before the closing date, Airport Square received notice that the Properties' tenants, the United States Army Corps of Engineers, planned to terminate its lease. (*Id.* ¶ 33). According to Airport Square, the lease termination had a significant adverse impact on the value of the Contract. (*Id.*). On March 28, 2016, approximately twenty-four hours before the closing date, Airport Square requested Colomary supply all information related to the termination of the tenant's lease agreement. (*Id.* ¶ 34). When Airport Square failed to deliver the balance of the purchase price for the Properties on March 29, 2016, Colomary declared the plaintiff in default of the Contract. (*Id.* ¶ 35).

In July of 2016, Airport Square filed a complaint in the Circuit Court for Anne Arundel County, and Colomary filed a notice of removal on August 16, 2016. (ECF No. 1 ¶ 1). Airport Square filed a complaint in this court on August 16, 2016. The complaint asserts five grounds for declaratory relief, asking the court to hold that the Contract between Airport Square and Colomary is void due to impossibility/impracticability (Count I), frustration of purpose (Count II), fraudulent inducement (Count III), and mutual mistake (Count IV), and that the Contract's liquidated damages clause is in actuality an unenforceable penalty (Count V). Additionally, Airport Square asserts a breach of contract claim (Count VI) and an unjust enrichment claim (Count VII). Defendant Colomary filed an answer and two counterclaims on August 17, 2016,

---

[3] The First Purchaser filed suit in state court on March 8, 2016. (*See* ECF No. 30, Ex. K). On December 1, 2016, the Circuit Court for Anne Arundel County granted summary judgment in favor of Colomary. (*See* ECF No. 32, p. 2, Ex. 1).

3

seeking a declaration that Colomary is entitled to possession of the escrow deposit (Count 1), and asserting breach of contract (Count II). (ECF No. 7). On November 9, 2016, Colomary filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 27). Plaintiff filed a cross motion under Rule 56(d) and 57 of the Federal Rules of Civil procedure, asking the court to deny or defer Colomary's motion for summary judgment to allow Airport Square time to take discovery and to compel Colomary to respond to discovery demands. (ECF No. 31).

## STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* When reviewing a motion for summary judgment, the court must take all facts and inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

While the party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio*

4

Corp., 475 U.S. 574, 586 (1986); *see also In re Apex Express* Corp., 190 F.3d 624, 633 (4th

Cir.1999).  The non-movant "'may not rest upon the mere allegations or denials of [his]

pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for

trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)

(alteration in original) (quoting Fed. R. Civ. P. 56(e)); *see also Adickes v. S. H. Kress & Co.*, 398

U.S. 144, 160 (1970).  A court should enter summary judgment when a party fails to make a

showing sufficient to establish elements essential to a party's case, and on which the party will

bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

## ANALYSIS

Airport Square seeks declaratory judgment from the court that the Contract between

Airport Square and Colomary is void (Count 1–IV) and that the liquidated damages clause in the

sales agreement is an unenforceable penalty (Count V).  Additionally, Airport Square asserts two

affirmative claims for breach of contract (Count VI) and unjust enrichment (Count VII) against

defendant Colomary.

Airport Square's claims regarding the voidability of the Contract rest on two primary

factual contentions: (1) Colomary was aware of the fact that the United States Army Corps of

Engineers intended to terminate its long-term lease and actively concealed this information from

the plaintiff; and (2) Colomary wrongfully terminated a valid sales contract with the First

Purchaser and did not disclose to Airport Square that Colomary could not deliver valid title.

Based on these allegations, Airport Square claims the parties' agreement is voidable under a

number of theories: (1) impossibility/impracticability; (2) frustration of purpose; (3) fraudulent

inducement; and (4) mutual mistake.[4]  Plaintiff also asks the court to declare the liquidated

damages provision in the parties' sales agreement unenforceable because it constitutes a penalty.

In addition to seeking declaratory judgment, Airport Square also claims that defendant

Colomary breached the Contract between the parties when it purported to terminate the

agreement following Airport Square's failure to deliver the balance of the purchase price on

March 29, 2016.  Lastly, Airport Square asserts that Colomary has been unjustly enriched by

wrongfully terminating the Contract and depriving plaintiff of the $1,000,000 escrow deposit.  In

response, Colomary argues that Airport Square has breached their valid sales agreement and

seeks declaratory judgment that defendant is entitled to retain the escrow deposit as liquidated

damages for plaintiff's unjustified breach.

I will first address Airport Square's requests for declaratory judgment on the issue of

voidability.[5]  I will then address the parties' arguments regarding liquidated damages and their

---

[4] I note that Airport Square also raises impossibility/impracticability, frustration of purpose, and fraud as affirmative defenses to counterclaims asserted by Colomary. (*See* ECF No. 21 ¶¶ 29–31, 35).  The analysis of these issues as they relate to the voidability of the Contract also applies to the use of these theories as affirmative defenses.  Aiport Square's other affirmative defenses are disposed of by my conclusion that plaintiff has failed to demonstrate a dispute of material fact with respect to the sales agreement with the First Purchaser and the United States Army Corps of Engineers' lease.

[5] I will not address at length Airport Square's request for declaratory judgment on the issue of mutual mistake, as the facts plead by the plaintiff clearly do not support this theory.  In order for the doctrine of mutual mistake to apply, the mistake alleged by the moving party must, in fact, be *mutual* and not unilateral. *See City of Baltimore v. De Luca-Davis Const. Co.*, 124 A.2d 557, 560 (Md. 1956).  Airport Square's entire theory of the case rests on the allegation that Colomary deliberately concealed information material to the agreement from the plaintiff regarding its previous agreement with the First Purchaser and the status of the lease agreement with the United States Army Corps of Engineers.  Plaintiff never once contends that *both* parties were mistaken with respect to information material to the Contract.  The contract is not, therefore, voidable on a theory of mutual mistake on the facts of this case as plead by the Plaintiff.  I note also that although Airport Square raised mutual mistake as a ground for voiding the Contract in its complaint, it did not elaborate on this theory in its subsequent briefing.

competing breach of contract claims.  Finally, I will analyze the Airport Square's unjust enrichment claim.

## I.    Validity of the Contract

### a.  *Impossibility/impracticability*

According to Airport Square, the fact that Colomary allegedly remained bound by a prior sales contract with the Properties' First Purchaser rendered the Contract impossible and impracticable to perform.  Because Colomary was contractually obligated to sell the properties to the First Purchaser, plaintiff contends, Colomary was unable to convey valid title to Airport Square.  Colomary insists that any former sales agreement with the First Purchaser had been properly terminated prior to the execution of the Contract and that Airport Square's claim regarding Colomary's inability to deliver title finds no support in the record.

The doctrine of legal impossibility or impracticability provides that "[i]f a contract is legal when made, and no fault on the part of the promisor exists, the promisor has no liability for failing to perform the promised act, after the law itself subsequently forbids or prevents the performance of the promise."  *Wischhusen v. American Medicinal Spirits Co.,* 163 Md. 565, 572–573, 163 A. 685, 687–688 (1933).  "In order to succeed under this theory, however, performance under the contract must be *objectively impossible. Harford Cty. v. Town of Bel Air,* 704 A.2d 421, 431 (Md. 1998) (emphasis added).  Circumstances that merely interfere with a party's performance on the contract or which make performance more onerous will not satisfy the standard for legal impossibility articulated by Maryland courts.  *See, e.g., Levine v. Rendler,* 320 A.2d 258, 262 (Md. 1974).

In order to support its claim regarding impossibility of performance, Airport Square relies almost exclusively on the fact that the First Purchaser filed a lawsuit against Colomary in state

court on March 8, 2016 alleging breach of contract and unjust enrichment. (*See* ECF No. 30, p. 2–6, Ex. K).[6]  As Airport Square correctly points out, the pending litigation initiated by the First Purchaser may qualify as a cloud on the Properties' title and it may make the transaction between Colomary and Airport Square more expensive for the plaintiff and more difficult to navigate. Airport Square does not, however, cite any support for the contention that the lawsuit, filed after Colomary and Airport Square executed the Contract, made delivery of title *impossible*. (*See id.* at p. 24).  The parties do not dispute that title was not, in fact, conveyed to the First Purchaser, and Colomary appears to have been entirely prepared to pass title to Airport Square on March 29th following the delivery of the balance on the purchase price. (*See* ECF No. 27, p. 3).[7] Accordingly, the doctrine of impossibility or impracticability cannot render the Contract void, and it is not a applicable defense for breach under the circumstances.

      b.  *Frustration of purpose*

      Airport Square argues that because the anchor tenant on the Properties terminated its longstanding lease and because the Properties had allegedly already been sold to the First Purchaser, the Agreement is void pursuant to the doctrine of frustration of purpose.  Without the Unites States Army Corps of Engineers' lease, Airport Square maintains, the "basis" of the Agreement has been completely undermined, and "the transaction makes absolutely no sense and serves no purpose." (ECF No. 2 ¶ 44).  Similarly, plaintiff claims that because the actual sale of

---

[6] Airport Square also cites an affidavit by a member of the First Purchaser which recites the same facts plaintiff puts forward in its complaint regarding the original sales agreement between the First Purchaser and Colomary. (*See* ECF No. 20, p. 2–6, Ex. C).  The affidavit demonstrates only that the First Purchaser and Colomary dispute the justifiability of Colomary's termination of their agreement and whether Colomary is in breach.  Airport Square does not, however, explain how this separate dispute renders Colomary unable to convey title to plaintiff altogether.

[7] Though it has no impact on the disposition of the current case, it is worth noting that on December 1, 2016, the Circuit Court for Anne Arundel County granted Colomary's motion for summary judgment against the First Purchaser.

the Properties was the "sole purpose" of the contract, defendant's alleged inability to convey title rendered the Contract completely nonsensical. (*See id.* ¶ 43). Colomary asserts that the tenant arrangement was never Airport Square's primary motivation for the Contract, much less the sole purpose of the Contract, and that plaintiff has provided no evidence of Colomary's alleged inability to convey title due to an earlier transaction with the First Purchaser.

Under the frustration of purpose doctrine, "where the purpose of a contract is completely frustrated and rendered impossible of performance by a supervening event or circumstance, the contract will be discharged." *Montauk Corp. v. Seeds,* 499, 138 A.2d 907, 911 (Md. 1958). In evaluating whether the doctrine applies, the court will evaluate: "(1) whether the intervening act was reasonably foreseeable; (2) whether the act was an exercise of sovereign power; and (3) whether the parties were instrumental in bringing about the intervening event." *Harford Cty. v. Town of Bel Air*, 704 A.2d 421, 431 (Md. 1998).

As Colomary correctly points out, the Contract makes very few references to the lease agreement with the United States Army Corps of Engineers. (*See* ECF No. 27, p. 8). The contract briefly references, for example, the allocation of responsibility of the lease obligations between the parties, (*see id.* at Ex. 1, p. 13, ¶ 4.2(b)), but there is no indication from the clear terms of the Contract that the lease agreement between Colomary and the United States Army Corps of Engineers was the sole or even the primary purpose of the sales agreement. Even taking into account the fact that the parties discussed the lease agreement several times in the months leading up to the execution of the sales agreement, (*see, e.g.*, ECF No. 30, Ex. B, ¶¶ 6–10, Ex. H), the record does not demonstrate that the status of the tenancy was the principal basis for the Contract. Furthermore, the communications between the parties leading up to the execution of the Contract indicate Airport Square was very much aware that the tenant could

potentially terminate their lease agreement. (*See, e.g., id.*). The tenant's plans, and Colomary's

lack of certainty about those plans, were the subject of multiple discussions between the parties.

(*See id.*). Accordingly, the doctrine of frustration of purpose is not an appropriate ground for

declaring the Contract void, and it is not a viable affirmative defense for Airport Square's

nonperformance on the Contract.

       c. *Fraudulent inducement*

      Additionally, Airport Square claims that the Contract should be declared void because

plaintiff was fraudulently induced to enter into the agreement by Colomary's misrepresentations

regarding the long-term status of the lease agreement with the United States Army Corps of

Engineers and its ability to deliver valid title at closing.[8]  Again, Colomary counters that it did

not make affirmative guarantees about the future of the lease agreement prior to the execution of

the Contract and that the sales agreement with the First Purchaser had been validly terminated.

Furthermore, Colomary argues that the Contract itself contains a number of express disclaimers

which directly contradict Airport Square's position with respect to its alleged reliance on any

pre-contractual misrepresentations.

      In order to state a claim for fraudulent inducement, a party must demonstrate five

elements: "(1) a material representation of a party was false; (2) falsity was known to that party

---

[8] Given the nature of the agreement, I will assume Colomary represented to Airport Square at the
time of execution that it was able to convey valid title to the Properties and that Airport Square
reasonably relied on this representation. Again, however, Airport Square has offered no concrete
evidence that Colomary's representations with respect to title were untrue.  As I discussed *supra*,
while the evidence offered by the plaintiff demonstrates the existence of a dispute between the
First Purchaser and Colomary regarding the termination of their agreement and the existence of a
potential breach, Airport Square has provided no authority for the proposition that this dispute
alone makes Colomary *unable* to deliver title to the Property to plaintiff.  Furthermore, the First
Purchaser did not file its complaint in state court until March 8, 2016—almost a week after
Airport Square and Colomary executed their agreement. (*See* ECF No. 30, Ex. K).  Accordingly,
this section will focus on alleged misrepresentations made regarding the lease agreement with
the United States Army Corps of Engineers.

or the misrepresentation was made with such reckless indifference to the truth as to impute

knowledge to him; (3) the misrepresentation was made with the purpose to defraud (scienter); (4)

the person justifiably relied on the misrepresentation; and (5) the person suffered damage

directly resulting from the misrepresentation." *Lawley v. Northam*, No. CIV.A. ELH-10-1074,

2011 WL 6013279, at *9 (D. Md. Dec. 1, 2011). A claim for fraudulent inducement, however,

may not be viable if the parties included detailed integration clause in their contract. "[T]he

existence of an integration clause in a written contract, standing alone, does not bar a fraud

count," *Greenfield*, 797 A.2d at 72; *see also Fowler v. Benton*, 185 A.2d 344, 352 (1962), and

where fraud is alleged to have induced a party to contract, a general merger clause is not

conclusive. *See id.* (citing 5 Williston, Contracts (Third Ed., Jaeger) § 811).

      In determining whether a contract's merger clause will bar recovery for pre-contractual

misrepresentations, Maryland courts distinguish between a general merger clause and a "specific

disclaimer of reliance upon certain representations." *Greenfield*, 797 A.2d at 75 (citing *Danann*

*Realty Corp. v. Harris*, 157 N.E.2d 597 (1959)); *see also Baqai v. Tri-State Cmty. Health Ctr.,*

*Inc.*, No. CIV. WDQ-09-2135, 2010 WL 2465024, at *3 (D. Md. June 11, 2010). When the

parties include a boilerplate merger clause disclaiming reliance on pre-contractual

representations generally, courts may still recognize a claim for fraudulent inducement; however,

when parties explicitly disclaim reliance on specific representations made before the contract

was executed, a claim for fraudulent inducement may be nullified. *Greenfield*, 797 A.2d at 75.

"Such a specific disclaimer destroys the allegations in the plaintiff's complaint that the

agreement was executed in reliance upon these contrary oral representations." *Id.* (quoting

*Danann*, 157 N.E.2d at 599).[9]  In essence, a specific disclaimer negates a party's claim that it justifiably relied on certain misrepresentations made prior to execution.

The Contract between Airport Square and Colomary contained both a general merger clause as well as a number of subject-specific waivers.  First, Airport Square disclaimed reliance on "any representation of any kind of nature made by seller, or any of its employees or agents or seller group with respect to the land or the property, and that, in fact, no such representations were made." (ECF No. 27, Ex. 1, p. 11, § 3.5).  Furthermore, the Contract states that Airport Square expressly waives claims "arising out of or relating in any way to tenants or occupants of the property or income, if any, to be derived from the property . . . ." (*See id.* at Ex. 1, p. 3, ¶ J). While the two aforementioned clauses are not immediately chronological in the Contract, the combination of Airport Square's disclaimer regarding all pre-contractual representations and the waiver of all claims regarding the tenants demonstrates that Airport Square understood the Contract to be a full and complete integration of the agreement between the parties.[10]

---

[9] Maryland courts are careful to clarify that, as a general principle, "[a] party to a contract cannot, by misrepresentation of material fact, induce the other party to the contract to enter into it to his damage and then protect himself from the legal effect of such a misrepresentation by inserting in the contract a clause to the effect that his is not to be held liable for the misrepresentation which induced the other party to enter the contract." *Martens Chevrolet, Inc. v. Seney*, 439 A.ed 534, n.7 (Md. 1982) (quoting *Jackson v. State*, 205 N.Y.S 658, 661 (N.Y. App. Div. 1924)).  As the court in *Head v. Head* points out, however, enforcing parties specific disclaimers of reliance on pre-contractual representations "does no violence to [this] principle." 477 A.2d 282, 288 (1984).

[10] It is worth noting here that the Contract also contains a number of clauses in which Airport Square expressly agrees that it has been given access and ample time to inspect the property and to perform its legal due diligence on the transaction. (*See, e.g.*, ECF No. 27, Ex. 1, §§ 3.2, 3.5). Airport Square is a sophisticated entity represented by counsel, and it is fair to impute to it the responsibility to do a thorough investigation of both the Properties and the written agreement prior to execution.  To the extent that the tenant's future plans or the pending litigation with the First Purchaser were discoverable prior to execution, the parties agreed that Airport Square would bear the cost of that risk.  Unless Airport Square can show that material information known to Colomary was actively concealed from the plaintiff, Airport Square should be held to the contractual waivers it accepted in the bargain.

Even if we were to say that the merger clause does not conclusively bar the plaintiff's

allegations of fraudulent inducement, the evidence offered by the plaintiff purporting to

demonstrate misrepresentations on the part of Colomary and its agents with respect to the status

of the lease agreement instead appears to show that defendant made clear to Airport Square that

it was uncertain of the tenant's plans. (*See e.g.*, ECF No. 30, Ex. H).[11] Rather than making

assurances regarding the long-term stability of the tenancy, Colomary explicitly states that it is

unsure of the tenant's future intentions. (*See id.*). Furthermore, though Airport Square maintains

that Colomary *was* in fact aware that the tenant intended to opt out of its lease, it has offered no

evidence tending to demonstrate defendant's knowledge. Airport Square cannot, therefore, void

the contract on the basis of fraudulent inducement.

Accordingly, I hold that the parties have a valid, enforceable contract that is not voidable

under the theories advanced by Airport Square.

## II.    Liquidated Damages

Airport Square also asks the court to declare Section 11.1 of the Contract, awarding

Colomary the escrow deposit in the event of default, an unenforceable penalty clause and order

the return of the escrow funds to plaintiff. Plaintiff contends that Section 11.1 fails to satisfy the

---

[11] The "Executive Summary" section of the promotional materials provided by Colomary to prospective purchasers does reference the longstanding tenancy relationship the defendant has with the United States Army Corps of Engineers and mentions the "high probability of renewal" of the lease agreement. (ECF No. 30, Ex. G, p. 4). Notably, however, while the summary highlights the profitability of the lease agreement, it makes no affirmative representations or assurances with respect to the tenant's future plans. (*See id.*). Furthermore, the record indicates that Colomary was justifiably under the impression that the tenant intended, at least initially, to renew the lease agreement for another year. (*See id.* at Ex. I, p. 4). Lastly, the email that Airport Square cites as evidence that Colomary's agents represented the tenant's lease agreement as "stable" also states, unequivocally, "[n]o one knows what the tenant is doing. No one. I'm not even sure the tenant knows what they are doing." (ECF No. 30, Ex. H, p. 1). Even if some of the language in the referenced email indicates Colomary believed the lease agreement was likely to continue, it also disclaims any guarantees.

requirements of a liquidated damages clause because the sum is uncertain, unreasonable, and may be altered to reflect "actual damages determined after the fact of the agreement." (ECF No. 30, p. 19–20). Colomary maintains that Section 11.1 is a valid liquidated damages clause and adequately reflects the allocation of risks and benefits agreed to by the parties.

Liquidated damages are defined as "a specific sum stipulated to and agreed upon by the parties at the time they entered into a contract, to be paid to compensate for injuries in the event of a breach of that contract." *Barrie Sch. v. Patch*, 933 A.2d 382, 388 (Md. 2007); *see also Bd. of Educ. v. Heister*, 896 A.2d 342, 351 (Md. 2006). A party seeking to invalidate a liquidated damages provision bears the burden of demonstrating that the provision constitutes a penalty and should not be enforced. *See Barrie Sch.*, 933 A.2d at 388. Where parties to a contractual agreement have agreed on an amount to be paid as liquidated damages in the event of a breach, that amount "will be regarded as liquidated damages and not a as a penalty, unless the amount so agreed upon and inserted in the agreement be so grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract." *Balto. Bridge Co. v. United Rys. & Electric Co.*, 93 A. 420, 422 (Md. 1915). Under Maryland law, a valid liquidated damages provision must satisfy three requirements: (1) the clause "must provide in clear and unambiguous terms for a certain sum;" (2) the damages "must reasonably be compensation for the damages anticipated by the breach;" and (3) the clause must be a "mandatory binding agreement[] before the fact which may not be altered to correspond to actual damages determined after the fact." *Bd. of Educ. of Talbon Cty. v. Heister*, 896 A.2d 342, 352 (Md. 2006) (internal quotations omitted). Whether a liquidated damages clause will be regarded as reasonable is assessed from the parties' perspective at the time of contract formation

14

rather than the breach, and "the decisive element is the intention of the parties." *Id.* (quoting *Traylor v. Grafton*, 332 A.2d 651, 660 (Md. 1975)).

The Contract at issue in this case expressly provides that the $1,000,000 non-refundable deposit paid to the escrow agent by Airport Square will be awarded to Colomary as liquidated damages in the event of plaintiff's breach. (*See* ECF No. 27, Ex. 1, p. 24, § 11.1).[12]  The "Buyer's Default" clause refers directly to the escrow deposit, which is defined as a sum of $1,000,000 in the "Key Terms" section of the contract. (*See id.* at Ex. 1, p. 4, § 1.4).  Though Airport Square maintains that the default clause does not adequately provide for a "sum certain," (*see* ECF No. 30, p. 19), the amount specifically designated as liquidated damages is unambiguous.  Furthermore, the parties acknowledge in the "Buyer's Default" clause that Colomary will suffer "substantial damages" in the event of Airport Square's default and that such damages are "incapable of exact ascertainment." (*Id.* at Ex. 1, p. 24, § 11.1).  In the face of uncertainty regarding the dollar amount of potential damages, the parties settled on a sum of $1,000,000, which amounts to less than seven percent of the substantial purchase price that Colomary would have collected in the if the deal closed as planned.  Given the value of the land deal, assigning the $1,000,0000 escrow deposit as liquidated damages in the event of plaintiff's breach is "neither grossly excessive nor out of all proportion to those which might have been expected at the time of contracting," *Barrie Sch.*, 401 Md. at 511–12, and is entirely reasonable under the circumstances.  Lastly, the liquidated damages provision qualifies as a "mandatory binding agreement[] before the fact." *Heister*, 896 A.2d at 352.  Though Airport Square insists

---

[12] Though the language of the default provision is not dispositive, it is worth noting that the clause unambiguously states the forfeited deposit is regarded by the parties as "liquidated damages and not as a penalty." (ECF No. 27, Ex. 1, p. 24, §11.1).  The parties to the Agreement were sophisticated entities represented by counsel and negotiating from positions of equal bargaining power.  The language expressly denying that the liquidated damages clause is a penalty is highly probative of the parties' intentions when entering into the contract.

that the clause leaves open the possibility of additional actual damages to be calculated after the

breach, the language cited by the plaintiff refers only to any specific obligations under the

contract that survive closing and does not allow for adjustment to the agreed upon liquidated

damages. (*see* ECF No. 30, p. 20).[13]  Accordingly, the default provision is a valid liquidated

damages clause and does not constitute an unenforceable penalty.

### III.   Breach of Contract

The parties' have asserted competing breach of contract claims.  Airport Square insists

that Colomary breached the Contract when it declared plaintiff in default and purported to

terminate the agreement after Airport Square failed to deliver the balance of the purchase price

by closing.  By contrast, Colomary contends that Airport Square defaulted under the terms of the

agreement by failing to deliver the purchase price, and breached the Contract by instructing the

escrow agent not to release the deposit funds to defendant.

Maryland courts have defined breach of contract as a "failure without legal excuse to

perform any promise which forms the whole or part of a contract." *Weiss v. Sheet Metal*

*Fabricators, Inc.*, 110 A.2d 671, 675 (1955) (quoting *Friedman v. Katzner*, 201, 114 A. 884, 886

(Md. 1921).  "Maryland law generally requires giving legal effect to the clear terms of a

contract," *Calomiris v. Woods*, 727 A.2d 358, 361 (Md. 1999), and it is "improper for the court

to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof

are clear and unambiguous, simply to avoid hardships," *Canaras v. Lift Truck Services*, 322 A.2d

---

[13] The clause states "[a]fter payment to Seller of the Deposit, neither Seller nor Buyer shall have
any further rights of obligations hereunder except that Buyer shall remain obligated with respect
to the indemnities and obligations of this Agreement which specifically survive termination."
(ECF No. 27, Ex. 1, p. 24, § 11.1).  This language makes clear that following a breach by Airport
and the payment of the escrow deposit to Colomary, neither the defendant nor the plaintiff may
alter the sum paid in liquidated damages, and are limited to enforcing only those remaining rights
specifically provided for in the contract.

866, 873 (Md. 1974). Parties are generally assumed to have bargained for the allocation of certain risks, and the agreed-upon allocation in the contract should not be disturbed absent a compelling reason.

There does not appear to be any dispute in this case that both parties were sophisticated entities with equal bargaining power. The Contract is detailed and extensive, and the record also indicates that the agreement between the parties was a product of considerable negotiation and planning. The portions of the Contract regarding purchase price, escrow deposit, and closing date are specific and unambiguous. The parties agreed upon a total purchase price of $14,910,000, the balance of which was to be delivered to Colomary by 2:00pm on March 29, 2016. (ECF No. 30, Ex. 1, p. 4, 5, §§ 1.3(c), 1.6). The Contract provides for a $1,000,000 deposit to be delivered by Airport Square to the escrow agent on March 4, 2016, and states that the deposit is "non-refundable" absent default by Colomary. (*Id.* at p. 4, § 1.4). Furthermore, the parties agreed upon a specific procedure and allocation of funds in the event either party defaulted on the agreement. Relevantly, the Contract states that in the event Airport Square fails to close the transaction as contemplated by the agreement, the escrow deposit will be paid to Colormary as liquidated damages. (*Id.* at p. 24, § 11.1). The language of these provisions is clear. Airport Square, however, advances a number of factual allegations against Colomary that plaintiff claims vitiate the Contract or otherwise excuse Airport Square from performing and forfeiting the deposit. As has been discussed at length *supra*, these factual allegations find no real support in the record. The parties do not appear to dispute the fact that the balance of the purchase price was not in fact delivered by Airport Square before 2:00pm on March 29, 2016.[14] Accordingly, Airport Square defaulted on the Contract without a valid excuse for

---

[14] There is no indication from any of Airport Squares' briefing or exhibits that plaintiff transferred any funds to the escrow agent after the $1,000,000 was delivered on March 4, 2016.

nonperformance, and it is in breach of the agreement in directing the escrow agent to withhold the deposit from Colomary.

## IV.   Unjust enrichment

Lastly, Airport Square claims that Colomary's retention of the escrow deposit would constitute unjust enrichment. Airport Square maintains that because Colomary had a previous binding commitment to sell the Properties to the First Purchaser and because it misrepresented the status of the lease agreement with the United States Army Corps of Engineers, allowing Colomary to keep the escrow deposit would be inequitable. Colomary reiterates that the deposit constitutes valid liquidated damages that defendant is entitled to retain due to Airport Square's failure to deliver the balance of the purchase price before the closing date. As I have discussed *supra*, the parties' had a valid sales contract that Airport Square breached by failing to close by 2:00pm on March 29th, and the liquidated damages clause in the Contract does not constitute an unenforceable penalty.

A substantive claim for unjust enrichment requires the plaintiff to demonstrate : (1) "[a] benefit conferred upon the defendant by the plaintiff;" (2) "[a]n appreciation or knowledge by the defendant of the benefit;" and (3) "[t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000) (quoting *County Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 n. 7 (Md. 2000)); *see also Dep't of Hous. & Cmty. Dev. v. Mullen*, 886 A.2d 900, 921 (Md. 2005), *cert. denied*, 894 A.2d 546 (Md. 2006) (stating that an claim for unjust enrichment essentially "deprive[s] the defendant of benefits that in equity and good conscience he ought not to keep"). Recognizing the nebulous nature of the unjust enrichment standard, courts often attempt to

ground the claim in some sort of demonstrable wrongdoing or mistake on the part of one of the contracting parties. *See Berry*, 757 A.2d at 113 (citing D. Friedmann, *Restitution of Benefits Obtained Through the Appropriation of Property or the Commission of a Wrong,* 80 Colum. L.Rev. 504, 504–05 (1980)); *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 352 (Md. 2007).

Though Airport Square did not elaborate on its unjust enrichment claim in its opposition brief, the claim rests on the same primary factual contentions alleged in plaintiff's complaint. (*See* ECF No. 2 ¶¶ 67–70). There is no doubt in this case that a benefit, the escrow deposit, was conferred on the defendant, and the defendant had knowledge of this benefit. Again, however, the record fails to adequately demonstrate that Colomary engaged in affirmative wrongdoing with respect to the Contract that would justify depriving the defendant of the deposit as an unjust enrichment. Furthermore, Airport Square has itself admitted that the loss of the tenant has a "catastrophic impact" on the value of the Contract. (ECF No. 30, p. 28). Presumably, if Colomary is seeking a new buyer for the Properties, it will have to lower the purchase price from the $14,910,000 it expected to receive from plaintiff. The parties explicitly provided for liquidated damages in the amount of $1,000,000 for Colomary in the event of Airport Square's failure to deliver the balance of the purchase price, and allowing Colomary to retain the deposit under the circumstances neither inequitable nor unconscionable.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted, and plaintiff's Rule 56(d) application, its motion to compel discovery, and its motion for extension of time to complete discovery are denied as moot. A separate order follows.

_____
Date

_____
/s/
J. Frederick Motz
United States District Judge

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 FEB 16  PM 3: 29

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY